UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
SARA BERGER,

                            Plaintiff,

           -against-

MAZDA MOTOR OF AMERICA, INC,

                            Defendant.
--------------------------------------------------------X

**REPORT AND
RECOMMENDATION**
16 CV 1835 (MKB) (CLP)

**POLLAK**, United States Magistrate Judge:

        On November 24, 2015, plaintiff Sara Berger ("plaintiff" or "Berger") commenced this personal injury action against Mazda Motor of America, Inc., d/b/a Mazda North American Operations ("defendant" or "Mazda"), in New York State Supreme Court, Kings[1] County. Plaintiff, the owner of a 2015 Mazda CX-5 Grand Touring SUV (the "Vehicle"), alleges that she injured her thumb on the "under-seat protrusions of sharp metal pieces" when she reached under the passenger side seat of the Vehicle.  She also alleges various other defects in the Vehicle that she contends were in breach of both the Vehicle's express warranty and the implied warranty of merchantability.

        The case was removed to this Court on April 14, 2016.  Following the completion of discovery, defendant now moves for summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure.  The motion was referred to the undersigned on August 8, 2018 to prepare a Report and Recommendation.  For the reasons set forth below, it is respectfully recommended that defendant's motion be granted in part and denied in part.

---

[1] While defendant's Memorandum of Law states that the action was initiated in Queens County, plaintiff actually initiated suit in Kings County.  (See Notice of Removal ¶ 1; Complaint, filed as Exhibit A to Notice of Removal, ECF No. 1-1).

## FACTUAL BACKGROUND

Plaintiff alleges that she resides in Brooklyn, New York and is a citizen of New York. (Compl.[2] ¶ 2).  She further alleges that defendant Mazda is a domestic LLC transacting business in and deriving substantial revenue from goods consumed and services rendered in the State of New York.  (Id. ¶¶ 3, 4).  Defendant alleges in its Notice of Removal that it is a corporation organized under the laws of the State of California with a principal place of business in California and that plaintiff alleges $85,000 in damages, bringing the case within the diversity jurisdiction of this Court, pursuant to 28 U.S.C. § 1332.  (See Notice of Removal ¶¶ 3, 6).

Plaintiff purchased her 2015 Mazda CX5 Grand Touring SUV (the "Vehicle") in August 2014 from an authorized Mazda dealership, paying approximately $35,000, of which she financed $22,000.  (Id. ¶¶ 7-9; see also Def.'s 56.1 Stmnt[3] ¶ 1; Pl.'s 56.1 Stmnt[4] ¶ 1).  Plaintiff testified during her deposition that she "settled" on the Vehicle even though she liked other vehicles better, but they were not within her budget.  (Def.'s 56.1 Stmnt ¶ 2 (citing Ex. D[5] at 24-26)).  Plaintiff alleges that the Vehicle came with multiple express manufacturer's warranties, which she claims defendant violated.  (Compl. ¶ 11; see also Def.'s 56.1 Stmnt ¶ 3; Ex. M[6] at 12).  Although plaintiff did not provide the Court with a copy of these warranties, defendant has provided a copy of the New Vehicle Limited Warranty, which came with the Vehicle and which

---

[2] Citations to "Compl." refer to plaintiff's Verified Complaint, dated November 24, 2015, filed as Exhibit A to Defendant's Notice of Removal, ECF No. 1-1.

[3] Citations to "Def.'s 56.1 Stmnt" refer to defendant's Statement of Material Facts Pursuant to Local Rule 56.1, dated April 16, 2018, ECF No. 48-17.

[4] Citations to "Pl.'s 56.1 Stmnt" refer to plaintiff's Statement of Material Facts Pursuant to Local Rule 56.1, dated June 13, 2018, ECF No. 46.

[5] Citations to "Ex. D" refer to the deposition transcript of plaintiff Sara Berger, taken on April 24, 2017 and filed July 6, 2018 as Exhibit D to Defendant's Motion for Summary Judgment, ECF No. 48-5.

[6] Citations to "Ex. M" refer to New Vehicle Limited Warranty, filed July 6, 2018 as Exhibit M to Defendant's Motion for Summary Judgment, ECF No. 48-14.

warranted that the Vehicle "'was free from defects in material or workmanship,'" subject to certain conditions.  (Def.'s 56.1 Stmnt ¶ 3 (citing Ex. M at 12)).  It further warranted that "'a Mazda Dealer will make necessary repairs, using new or remanufactured parts, to correct any problem covered by this warranty without charge to you.'"  (Id.)

Plaintiff alleges that on March 11, 2015, while she was sitting in her Vehicle, she reached under the passenger's side seat and "severely lacerated her left thumb" on sharp metal pieces protruding from under the seat.  (Compl. ¶ 14).  Plaintiff allegedly required six stitches to her thumb, leaving a permanent scar.  (Id. ¶¶ 15, 16; Pl.'s 56.1 Stmnt ¶ 21).  As a result of the injury, plaintiff was forced to wear a splint and could not type; her work involves her typing constantly at a computer.  (Compl. ¶¶ 17,18).  Plaintiff alleges that she brought the dangerous condition, which is under both the driver's and passenger's front seats, to Mazda's attention, but Mazda "has not resolved" the issue, creating a risk of future harm.  (Id. ¶¶ 19-20).

Plaintiff raises a number of other complaints and problems that she has had with the Vehicle, including: 1) she receives a message, "'key not found on the dashboard,'" after which she cannot get back into her car using the keyless entry; 2) there was an issue with the inner left tie rod; when turning the wheel all the way to the left, "the car made a metal-on-metal grinding noise;" 3) there is a paint defect in the middle of the ledge near the trunk of the Vehicle; 4) there is a delay in the heating of the Vehicle's seats; and 5) the Vehicle made a "squeaking noise" as it traveled across safety bumps, which the dealer allegedly attributed to a defect in the rear passenger side strut.  (Id. ¶¶ 22-32).  Plaintiff alleges that each of these problems, some of which cause a potential hazard, were brought to Mazda's attention.  (Id.)  Although plaintiff alleges in her Complaint that the issues have not been resolved (id.), Mazda disagrees.  (Def.'s 56.1 Stmnt ¶¶ 4, 5 (citing Ex. D at 79-87)).

In her Complaint, plaintiff brings claims of negligence and strict liability for the manufacturing defects, and breach of express and implied warranties. (Id. ¶¶ 33-62). Defendant moves for summary judgment on plaintiff's tort product liability claims, arguing that she cannot sustain her burden of showing a manufacturing defect; the seat was reasonably safe and did not present any design defects; and there were no defects in workmanship or material. Defendant also moves for summary judgment on plaintiff's other breach of warranty claims on the grounds that there was no breach of these warranties.

## DISCUSSION

A.  Summary Judgment Standards

It is well-settled that a party moving for summary judgment has the burden of establishing that there is no genuine issue of material fact in dispute and that the moving party is entitled to judgment as a matter of law. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Thompson v. Gjivoje, 896 F.2d 716, 720 (2d Cir. 1990). Since summary judgment is an extreme remedy, cutting off the rights of the non-moving party to present a case to the jury, see Egelston v. State Univ. College at Geneseo, 535 F.2d 752, 754 (2d Cir. 1976); Gibralter v. City of New York, 612 F. Supp. 125, 133-34 (E.D.N.Y. 1985), the court should not grant summary judgment unless it is clear that all of the elements have been satisfied. See Auletta v. Tully, 576 F. Supp. 191, 194-95 (N.D.N.Y. 1983), aff'd, 732 F.2d 142 (2d Cir. 1984). In addition, "'the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion.'" Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986) (quoting United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)).

Once the moving party discharges its burden of proof under Rule 56(c), the party opposing summary judgment "has the burden of coming forward with 'specific facts showing that there is a genuine issue for trial.'" Phillips v. Kidder, Peabody & Co., 782 F. Supp. 854, 858 (S.D.N.Y. 1991) (quoting Fed. R. Civ. P. 56(e)). Rule 56(e) "provides that a party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of his pleading." Anderson v. Liberty Lobby, Inc., 477 U.S. at 256. A party opposing summary judgment may not "merely. . . assert a conclusion without supplying supporting arguments or facts." BellSouth Telecomms., Inc. v. W.R. Grace & Co., 77 F.3d 603, 615 (2d Cir. l996) (internal quotations omitted). The party must set forth "concrete particulars" showing that a trial is necessary. Nat'l Union Fire Ins. Co. v. Deloach, 708 F. Supp. 1371, 1379 (S.D.N.Y. 1989). Indeed, "the mere existence of some alleged factual dispute between the parties" alone will not defeat a properly supported motion for summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. at 247-48 (emphasis in original).

In reversing a grant of summary judgment, the Second Circuit noted that the "'[t]rial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them.'" Quaratino v. Tiffany & Co., 71 F.3d 58, 65 (2d Cir. 1995) (quoting Gallo v. Prudential Residential Servs., L.P., 22 F.3d 1219, 1224 (2d Cir. 1994)).

B. Manufacturing and Design Defects

Plaintiff has alleged that Mazda should be held strictly liable for her thumb injury based on both the theory that there was a manufacturing defect and the theory of a defect in the design of the underside of the front passenger seat that caused the injury.

1) <u>Standards – Manufacturing Defect</u>

A manufacturer may be liable if it places a defective product on the market that then causes the plaintiff's injuries.  <u>Arbaiza v. Delta Int'l Machinery Corp.</u>, No. 96 CV 1224, 1998 WL 846773, at *4 (E.D.N.Y. Oct. 5, 1998) (citing <u>Liraino v. Hobart Corp.</u>, 92 N.Y.2d 232, 700 N.E.2d 303, 677 N.Y.S.2d 764 (1998)).  A plaintiff must establish that the product suffered from a defective design, defective manufacture, or inadequate warnings.  <u>June v. Lift-A-Loft Equip., Inc.</u>, No. 88 CV 1205, 1992 WL 168181, at *2 (N.D.N.Y. July 13, 1992) (citing <u>Robinson v. Reed Prentice Div. of Package Mach. Co.</u>, 49 N.Y.2d 471, 479, 403 N.E.2d 440, 443, 426 N.Y.S.2d 717, 720 (1980)).

"Under New York law, [i]t is well settled that, whether [an] action is pleaded in strict products liability, breach of warranty or negligence, it is a consumer's burden to show that a defect in the product was a substantial factor in causing the injury."  <u>Vicusi v. P&G – Clairol, Inc.</u>, 346 Fed. Appx. 715, 716 (2d Cir. 2009); <u>Porrazzo v. Bumble Bee Foods, LLC</u>, 822 F. Supp. 2d 406, 414 (S.D.N.Y. 2011).  Although plaintiff has alleged both negligence and strict liability, this court in <u>DeRosa v. Remington Arms Co., Inc.</u>, noted:  "[n]egligence and strict liability for design defects are, in New York, almost functionally equivalent."  509 F. Supp. 762, 766 (E.D.N.Y. 1981); <u>see also</u> <u>Colon ex rel. Molina v. BIC USA, Inc.</u>, 199 F. Supp. 2d 53, 82 (S.D.N.Y. 2001) (noting that strict liability under New York law requires a showing that there was a defective product that caused plaintiff's injury; to make out "a prima facie case for negligence  . . . a plaintiff must show (1) that the manufacturer owed plaintiff a duty to exercise reasonable care; (2) a breach of that duty by failure to use reasonable care so that a product is rendered defective, i.e. reasonably certain to be dangerous; (3) that the defect was the proximate

cause of plaintiff's injury and (4) loss or damage"); <u>Arbaiza v. Delta Int'l Mach. Corp.</u>, 1998 WL 846773, at *4-5.

To make out a claim of a manufacturing defect, plaintiff must demonstrate that "the product was not built to specifications or that it did not conform to the manufacturer's intended design." <u>Minda v. Biomet, Inc.</u>, No. 98 CV 9533, 1999 U.S. App. LEXIS 15574, at *2 (2d Cir. 1999). A manufacturing defect exists when there is a departure from the design specifications of the product or when the product is "physically flawed, damaged, or incorrectly assembled." RESTATEMENT (THIRD) OF TORTS: PROD. LIAB. § 2 (1998). A defendant moving for summary judgment to dismiss a claim of manufacturing defect "must submit proof in an admissible form establishing that plaintiff's injuries were not caused by a manufacturing defect in the product." <u>Minda v. Biomet, Inc.</u>, 1999 U.S. App. LEXIS 15574, at *3 (citing <u>Brown v. Borruso</u>, 238 A.D.2d 884, 885, 660 N.Y.S.2d 780, 781 (4th Dep't 1997)). The burden "then shifts to the plaintiff to demonstrate a triable issue as to whether in fact there was a defect. To meet that burden, a plaintiff cannot rely solely upon the occurrence of the accident, but must submit some direct evidence that a defect existed." <u>Id.</u>; <u>see also</u> <u>Brown v. Borruso</u>, 238 A.D.2d at 885, 660 N.Y.S.2d at 781 (affirming a grant of summary judgment where defendants submitted evidence of testing of the product at issue that failed to reveal any defect); <u>Winckel v. Atlantic Rentals & Sales</u>, 159 A.D.2d 124, 126, 557 N.Y.S.2d 951, 953 (2d Dep't 1990) (holding that a defendant must provide evidence of other potential causes of the accident to switch the burden to the plaintiff to produce "direct evidence of a defect").

The existence of a manufacturing defect "may be inferred from circumstantial evidence, provided that the plaintiff has proven that the product has not performed as intended and has

excluded all other possible causes of the defect not attributable to the defendant." <u>Sanchez v. Stanley-Bostitch, Inc.</u>, No. 98 CV 494, 2000 WL 968776 (S.D.N.Y. July 13, 2000).

 2) <u>Analysis – Manufacturing Defect</u>

 Plaintiff argues that defendant should be held liable for a manufacturing defect in the underside of the front passenger seat. She testified that she sustained a laceration to her thumb caused by protruding pieces of sharp metal on the underside of the front passenger seat that required six stitches and left a scar. (Pl.'s Mem.[7] at 4; Ex. D at 157).

 Defendant moves for summary judgment on the manufacturing defect claim based on plaintiff's failure to demonstrate that the underside of the seat was defective or that there was a departure from the design specifications. (Def.'s Mem.[8] at 16).

 In moving for summary judgment on these claims, defendant first argues that the facts fail to demonstrate that there was a defect in either the material or workmanship of the seat. (<u>Id.</u> at 11). With respect to plaintiff's thumb injury, defendant notes that according to her own testimony, plaintiff was in the driver's seat at the time of the incident and the car was parked. (Def.'s 56.1 Stmnt ¶ 21, Ex. D at 111-13). She reached under the passenger seat to look for her phone, touching the floor under the seat with her fingers and reaching around towards the passenger door. (<u>Id.</u>, Ex. D at 137, 138, 143; Pl.'s 56.1 Stmnt ¶ 21). Although she apparently did not feel when she cut her hand or when it came into contact with the under-seat assembly, plaintiff claims that she saw blood on her thumb after she removed her hand from under the seat. (Ex. D at 144, 146, 147). Thus, defendant argues that plaintiff did not actually see what caused

---

[7] Citations to "Pl.'s Mem." refer to plaintiff's Memorandum of Law in Opposition to Motion for Summary Judgment, filed June 13, 2018, ECF No. 45.

[8] Citations to "Def.'s Mem." refer to defendant's Memorandum of Law in Support of Motion for Summary Judgment, filed July 6, 2018, ECF No. 48-16.

the cut or how it happened, and that she did not look under the seat to check and could not state what specific part of the Vehicle was defective and caused the injury. (Id. ¶ 22, Ex. D at 149-50, 180-81).

Defendant presented the testimony of its expert, Jason Arst, a mechanical engineer licensed in the State of California. (Arst Aff. [9] ¶ 2). Mr. Arst has "over twenty-eight years of experience in the fields of mechanical and automotive engineering and accident reconstruction." (Id.)

According to Mr. Arst, the seat is designed so that there is a plastic trim which wraps around both the inside and outside of the lower sides of the seat, covering the structure of the seat and its adjusting mechanisms. (Id. ¶ 11). Defendant further argues that the seat is mounted on a raised part of the Vehicle floor which prevents objects from sliding under the seat, eliminating the need for a passenger or driver to place their hands under the seat, as well as a wiring harness which also limits access to the underside of the seat. (Id.) Accordingly, defendant argues that Mr. Arst found the underside of the seat to be reasonably safe, with no discernable defects. (Def.'s Mem. at 17 (citing Arst Aff. ¶ 11)).

Defendant also argues that plaintiff never even requested discovery of the manufacturer's design specifications to show that the seat as manufactured deviated from the design. (Id. at 16). Defendant notes that Mr. Arst actually compared the Vehicle to an exemplar 2015 Mazda CX-5 and opined that the right front passenger seat of plaintiff's Vehicle and the underside of the exemplar vehicle appeared to be identical and therefore, it was his conclusion that there were no

---

[9] Citations to "Arst Aff." refer to the Affidavit of Jason Arst, dated April 13, 2018, ECF No. 48-15.

deviations from the design in the manufacture of the plaintiffs' Vehicle.  (Def.'s Reply[10] at 6).
Defendants argue that, by contrast, plaintiff's expert, Dr. Lear, did not opine on the
manufacturing defect aspect of her claim, simply stating that the Vehicle "was not reasonably
safe, state-of-the art product or design."  (Lear Aff. ¶ 12).

  Plaintiff argues that circumstantial evidence may be used to demonstrate the existence of
a manufacturing defect.  (Pl.'s Mem. at 3 (citing Humphrey v. Diamont Boart, Inc., 556 F.
Supp.2d 167 (E.D.N.Y. 2008); Dubecky v. S2 Yachts, Inc., 234 A.D.2d 501, 651 N.Y.S.2d 602,
603 (N.Y App. Div. 1996))).  She contends that when she brought the car into the dealer for the
service inspection, the mechanics removed the seat and she observed a "lot of sharp metal areas."
(Id. at 5).  Plaintiff testified that the mechanics made repairs to the seat by "put[ting] some felt on
some areas."  (Ex. D at 168).

  In further support of her claim of a manufacturing defect, plaintiff has submitted the
Affidavit of Dr. George M. Lear,[11] an "experienced automotive professional," who inspected the
Mazda front passenger seat by dismounting it in order to examine and photograph the underside.
(Lear Aff.[12] ¶ 8).  According to Dr. Lear, his inspection revealed "a number of sharp edges on
the underside of the front passenger seat and at least two sharp points that could cause the type of

---

[10] Citations to "Def.'s Reply" refers to defendant's Memorandum of Law in Reply to
Plaintiff's Opposition and In Further Support of Motion for Summary Judgment of Defendant
Mazda Motor of America, Inc. d/b/a Mazda North American Operations, filed July 6, 2018, ECF
No. 49.

[11] Dr. Lear's report only addressed the issue of the seat warmer and the underside of the
front passenger seat; he did not render an opinion on any of the other claimed defects.  (See
Report of George M. Lear ("Lear Rep."), dated October 11, 2017, attached as Exhibit B to the
Declaration of Counsel in Oppositoin [sic] of Motion For Summary Judgment, filed June 13,
2018, ECF No. 47-1.

[12] Citations to "Lear Aff." refer to the Affidavit of Expert, dated June 11, 2018, attached
as Exhibit A to the Declaration of Counsel in Oppositoin [sic] of Motion For Summary
Judgment, filed June 13, 2018, ECF No. 47-1.

injury Plaintiff suffered in this case." (Id.)  He noted that there was a "sharp mounting tab" below the front passenger seat where the "lock mechanism which held the module on the tab had failed and the module was a loose slip fit." (Id.)  He also observed that one of the front passenger seat attachment bolts was severely damaged. (Id. ¶ 9).  Dr. Lear disagreed with defendant's expert, Mr. Arst, noting that plaintiff, in reenacting the incident, could easily fit her hand under the front passenger seat. (Lear Aff. ¶¶ 10-11).  His inspection and plaintiff's reenactment of the incident, along with photographs taken of the sharp edges on the underside of the Vehicle, led Dr. Lear to conclude that "the Mazda's protruding sharp edges on the underside of the front passenger seat is not a reasonably safe, state-of-the-art product or design – as manufactured or distributed," and could have led to the type of injury suffered by plaintiff. (Id. ¶ 12).

Plaintiff contends that Dr. Lear's conclusion that the sharp edges were not a "reasonably safe, state-of-the-art product or design – as manufactured or distributed" (id.), is sufficient to raise a plausible claim of manufacturing defect. (Pl.'s Mem. at 5-6).  Moreover, while defendant argues that Mr. Arst found the underside of the seat to be reasonably safe, with no discernable defects, plaintiff notes that Arst's inspections of the seat took place on February 24, 2017 and on April 20, 2017, two years after repairs had been made.[13] (See Arst Aff. ¶ 5).  Defendant does not appear to dispute that repairs were made to the seat in April 2015.  Indeed, defendant supplied the Court with an invoice from Manfredi Auto Group, a Mazda service center, denoting that on

---

[13] Plaintiff notes that Mr. Arst examined the seat two years after its repair in April 2015 and found nothing sharp. (Ex. G).  Thus, plaintiff contends that "any evidence relevant to the condition of the underside of Plaintiff's vehicle had at or near the time of the injury had already been repaired and/or removed," explaining why Mr. Arst "found nothing sharp in the location that Miss Berger has testified to where she received the thumb laceration."  (Pl.'s Mem. at 8 (citing Arst Aff., Ex. G at 1, 3)).

April 13, 2015, plaintiff informed the service center that she had "sliced her finger when reaching for object under seat" and that the seat was inspected and a mechanic at the service center "installed tape over sharp arm under driver and pass [sic] seats." (Ex. F).[14]  However, defendant does not address plaintiff's critique of Mr. Arst's conclusion in light of the fact that Mr. Arst examined the seat after repairs had been made.

Having considered the parties' respective arguments and the supporting documentation provided by the experts, the Court respectfully recommends that summary judgment be denied as to plaintiff's claim of manufacturing defect insofar as the front passenger seat is concerned. Plaintiff's citation to the observation of sharp metal pieces during the service inspection, coupled with Dr. Lear's observations, support plaintiff's claim that these sharp metal pieces were what caused her injury.  Plaintiff has therefore raised specific facts showing a genuine issue for trial as to whether the seat was "physically flawed, damaged, or incorrectly assembled," at the time of manufacture, producing these sharp pieces of metal and defective bolts.  While Mr. Arst found the underside of the seat was reasonably safe, with no discernable defects, the trier of fact may consider that his inspection of the seat took place two years after repairs had been made, and when the sharp metal pieces were no longer visible.  Moreover, although defendant purports to quote from Dr. Lear's report to argue that Dr. Lear fails to mention a manufacturing defect in his report, defendant's quoted portion of the report significantly fails to include Dr. Lear's conclusion that the underside of the seat "is not a reasonably safe, state-of-the-art product or design – as <u>manufactured</u> or distributed."  (Lear Aff. ¶ 12) (emphasis added).

---

[14] Citations to "Ex. F" refer to the April 13, 2015 Invoice from Manfredi Auto Group, filed July 6, 2018 as Exhibit F to Defendant's Motion for Summary Judgment, ECF No. 48-7, showing that repairs were made to the underside of the driver's and passenger's side seats as well as the rear suspension; and that plaintiff's complaints of the seat heater, keyless entry and paint defect were inspected and that no issues were found.

Under these circumstances, the Court finds that plaintiff has proffered sufficient evidence to raise a material issue of fact as to the existence of a defect in the manufacture of the seat and that the circumstantial evidence surrounding plaintiff's injury is sufficient to withstand defendant's motion for summary judgment on the manufacturing defect claim. Thus, it is respectfully recommended that defendant's motion for summary judgment on plaintiff's manufacturing defect claim be denied.

3) Standards – Design Defect

Defendant also moves for summary judgment with respect to any claim of design defect. Although defendant contends that plaintiff does not specifically allege a claim for design defect in her Complaint, she raises such a claim in her responses to interrogatories and in her expert's report which discusses the design of the underside of the seat. (Def.'s Mem. at 16 (citing Exs. C, K, L)). Thus, the Court considers whether plaintiff has submitted sufficient evidence to raise a material issue of fact as to the design defect claim.

In seeking to impose strict liability on the manufacturer for a design defect, plaintiff must prove that:

> (1) The product is "defective" because it is not reasonably safe as marketed; (2) the product was used for a normal purpose; (3) the defect was a substantial factor in causing the plaintiff's injuries; (4) the plaintiff by the exercise of reasonable care would not have both discovered the defect and apprehended its danger; (5) the plaintiff would not have otherwise avoided the injury by the exercise of reasonable care.

Fane v. Zimmer, Inc., 927 F.2d 124, 128 (2d Cir. 1991) (quoting Wolfgruber v. Upjohn Co., 72 A.D.2d 59, 62, 423 N.Y.S.2d 95, 97 (4th Dep't 1974), aff'd, 52 N.Y.2d 768, 417 N.E.2d 1002, 436 N.Y.S.2d 614 (1980)). The plaintiff must show that there was a design defect known at the time of manufacture, and that a reasonable person would conclude that the utility of the product

did not outweigh the risk inherent in marketing the product designed in that manner.  See Voss v. Black & Decker Mfg. Co., 59 N.Y.2d 102, 108, 450 N.E.2d 204, 208, 463 N.Y.S.2d 398, 402 (1983).  Plaintiff also has the burden of proving that the defect was a proximate cause of plaintiff's injury.  Id. at 109, 450 N.E.2d at 208, 462 N.Y.S.2d at 403.  It will be up to the jury to decide if the product was "'not reasonably safe when placed in the stream of commerce.'"  Hart v. Hytrol Conveyor Co., 823 F. Supp. 87, 91 (N.D.N.Y. 1993) (quoting LaPaglia v. Sears Roebuck & Co., 143 A.D.2d 173, 177, 531 N.Y.S.2d 623, 627 (2d Dep't 1988), appeal denied in part, 74 N.Y.2d 624, 539 N.E.2d 1107, 541 N.Y.S.2d 979 (1989).

The burden is on plaintiff to demonstrate not only that there was a substantial likelihood of harm, but also that it was feasible to design the product in a safer manner.  Fane v. Zimmer, Inc., 927 F.2d at 128; see also Rainbow v. Albert Elia Bldg. Co., 79 A.D.2d 287, 291, 436 N.Y.S.2d 480, 483 (4th Dep't 1981), aff'd, 56 N.Y.2d 550, 434 N.E.2d 1345, 449 N.Y.S.2d 967 (1982).  When the product does not perform in the manner intended, a defect may be inferred, but "'only if plaintiff excludes all causes of the [injury] not attributable to defendant.'"  Gilks v. Olay Co., 30 F. Supp. 2d 438, 443 (S.D.N.Y. 1998) (quoting Henry v. General Motors Corp., 201 A.D.2d 949, 609 N.Y.S.2d 711 (4th Dep't), leave to appeal denied, 84 N.Y.2d 803, 641 N.E.2d 158, 617 N.Y.S.2d 137 (1994)).

In moving for summary judgment, defendant must submit evidence that the product was reasonably safe as manufactured and sold, and that the product has been designed in such a way to reduce the risks to the greatest possible extent while retaining the product's usefulness at a reasonable cost.  See Hart v. Hytrol Conveyor Co., 823 F. Supp. 87, 91 (S.D.N.Y. 1993).

4)  <u>Analysis – Design Defect</u>

Defendant raises challenges to plaintiff's claim that there was a design defect with respect to the underside of the front passenger's seat.  Citing Mr. Arst's report, defendant argues that the seat "is reasonably safe as designed."  (Def.'s Mem. at 17).  Specifically, defendant points to the plastic trim that covers the inside and outside of the seat structure and adjusting mechanisms.  This trim, coupled with the fact that the seat is mounted on a raised structural section of the floor, providing a barrier to prevent objects from sliding underneath the seat, was designed to eliminate the need for anyone to put their hand under the seat.  (<u>Id.</u> (citing Arst Aff. ¶ 11)).  According to Mr. Arst's Affidavit, the front passenger seat structure was similar in design to the Toyota RAV4, and that because the seat is intended to be adjustable, the underside of the seat had to remain open to allow it to slide forward and back.  (<u>Id.</u>)  Defendant relies on Mr. Arst's conclusion that the design was reasonably safe and presented no defects.  (Arst Aff. ¶ 11).

Defendant further argues that plaintiff's design defect claim fails because she has not presented any feasible design alternative.  (Def.'s Reply at 6 (citing <u>Glockenberg v. Costco Wholesale Corp.</u>, 110 A.D.3d 952, 955, 973 N.Y.S.2d 360, 363 (2d Dep't 2013) (affirming dismissal of design defect claim because plaintiff failed to raise an issue of fact as to whether at the time of manufacture, it was feasible to design the product in a safer manner)); <u>see also</u> <u>Magadan v. Interlake Packaging Corp.</u>, 45 A.D.3d 650, 652, 845 N.Y.S.2d 443, 445 (2d Dep't 2007) (dismissing design defect claim where "plaintiff failed to raise an issue of fact as to whether at the time the [product] was manufactured, it was feasible to design it in a safer manner").  Defendant argues that plaintiff's expert, Dr. Lear, admitted that he had formed no opinion as to whether there was an alternative design and plaintiff fails to even address this element of a design defect claim in her motion papers.  (Def.'s Reply at 7).

As defendant notes, a key element in proving a design defect is the need to show that there was an alternative feasible design that would have been safer.  Glockenberg v. Costco Wholesale Corp., 110 A.D.3d at 955, 973 N.Y.S.2d at 363; Magadan v. Interlake Packaging Corp., 45 A.D.3d at 652, 845 N.Y.S.2d at 445; see also Fane v. Zimmer, Inc., 927 F.2d at 128; Rainbow v. Albert Elia Bldg. Co., 79 A.D.2d at 291, 436 N.Y.S.2d at 483.  In the absence of such proof, courts have dismissed design defect claims.  See, e.g. Glockenberg v. Costco Wholesale Corp., 110 A.D.3d at 955, 973 N.Y.S.2d at 363 (finding that defendant's "conclusory assertion . . . that 'it was both technically and economically feasible to develop a system . . . less prone [to error]' did not suffice to raise a triable issue of fact").  Perhaps plaintiff's failure to explicitly plead a design defect claim in her Complaint was in recognition that she would be unable to satisfy this element of her burden of proof.

Thus, while plaintiff may have raised sufficient evidence to raise a genuine issue of material fact as to whether there was a manufacturing defect in the underside of the Vehicle's seat, to the extent that plaintiff is also seeking to pursue a theory of design defect, she has failed to present sufficient facts to show the existence of an alternative design to counter defendant's argument.

Accordingly, the Court respectfully recommends that defendant's motion for summary judgment on any design defect claim be granted.

C)  Plaintiff's Warranty Claims

In addition to her manufacturing and design defect claims, plaintiff alleges claims of breach of express warranty and implied warranty of merchantability.  (Compl. ¶¶ 44-51, 59-62). Defendant moves for summary judgment on plaintiff's breach of warranty claims with respect to the claimed metal protrusion that allegedly caused her injury.  (Def.'s Mem. at 19).  Defendant

also moves for summary judgment on plaintiff's breach of warranty claims with respect to her claimed paint defect, noise complaints, keyless entry complaint, and complaint about the seat warmer.  (Id. at 10).

1) Express Warranties

Article 2 of the Uniform Commercial Code ("UCC") governs contracts for the sale of automobiles.  Diaz v. Your Favorite Auto RPR & DI, No. 4404-2011, 2012 WL 1957750, at *1 (N.Y. Civ. Ct. Kings Cty, May 29, 2012).  Under New York law,[15] a manufacturer may be held liable for a breach of express warranty so long as there is a material statement of fact or promise made by the seller to the buyer which relates to the goods and amounts to a warranty."  N.Y. UCC § 2-313(1)(a) (providing that "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise").  In addition, there must be a showing of reliance on that promise or representation; breach of the promise; and injury caused by the breach.  See CBS Inc. v. Ziff-Davis Publ'g Co., 75 N.Y.2d 496, 503, 553 N.E.2d 997, 1000-01, 554 N.Y.S.2d 449, 452-53 (1990); see also Promuto v. Waste Management, Inc., 44 F. Supp. 2d 628, 642 (S.D.N.Y. 1999) (holding that under New York common law, in order for plaintiff to recover for damages as a result of such breach, there must be a showing that: "(1) plaintiff and defendant entered into a contract; (2) containing an express warranty by the defendant with respect to a material fact; (3) which warranty was part of the basis of the bargain; (4) the express warranty was breached by defendant").  A plaintiff must also "prove that the

---

[15] In determining that New York law applies in this case, the Court notes that both parties rely on New York law in their briefing and accordingly, "'such consent. . . is sufficient to establish choice of law.'"  Diaz v. Paragon Motors of Woodside, Inc., 424 F. Supp. 2d 519, 527 (E.D.N.Y. 2006) (quoting Motorola Credit Corp. v. Uzan, 366 F.3d 39, 61 (2d Cir. 2004)).

product was being used for the purpose and in the manner intended." <u>Henry v. Rehab Plus Inc.</u>, 404 F. Supp. 2d 435, 444 (E.D.N.Y. 2005).

"Rather than guaranteeing performance without malfunction during the term of the warranty, a warranty anticipates that failures will occur and that they will be corrected." <u>Diaz v. Paragon Motors of Woodside, Inc.</u>, 424 F. Supp. 2d at 541.  <u>See also</u> <u>Aracena v. BMW of North America, LLC</u>, 159 A.D. 3d 664, 665, 71 N.Y.S. 3d 614, (2d Dep't 2018) (affirming a grant of summary judgment where "the defendant established . . . that it performed all warrantied repairs in accordance with the terms of the warranty, and . . . [i]n opposition, the plaintiff failed to raise a triable issue of fact").

Plaintiff alleges that the Vehicle came with several express manufacturer's warranties, including:  1) a "3-year/36,000-mile (whichever comes first) 'bumper-to-bumper' limited warranty;" 2) a "5-year/60,000 mile (whichever comes first) 'bumper-to-bumper' limited powertrain warranty;" and 3) a "5-year/unlimited mileage warranty against body rust-through." (Compl. ¶ 11(a)-(c)).  In her Complaint, plaintiff alleges that "[s]ome or all of the aforementioned problems with Plaintiff's Vehicle are covered under one or more of the Express Warranties;" and that "Defendant refused to honor any of the express warranties" when presented with problems in the Vehicle.  (<u>Id.</u> ¶¶ 60, 61).  Plaintiff has never provided the Court with a copy of the warranties or with the actual language contained within the warranties.

Defendant, however, has provided a copy of the New Vehicle Limited Warranty (the "Warranty") that it claims was in place when plaintiff purchased the Vehicle.  (Ex. M).  The Warranty states that "[a]ny component of your new Mazda Vehicle is covered for 36 months or 36,000 miles, whichever comes first, from the earlier date of either retail delivery or first use of the Mazda Vehicle."  (<u>Id.</u> at 12).  The Warranty contains the following terms: "Mazda warrants

that your new Mazda Vehicle is free from defects in material or workmanship, subject to the following terms and conditions.  A Mazda Dealer will make necessary repairs, using new or remanufactured parts, to correct any problem covered by this warranty without charge to you." (Id.)  The Warranty also contains two pages with the heading "What Is Not Covered," which includes "Factors Beyond the Manufacturer's Control . . ." and "Normal Deterioration . . . ," with examples such as "[d]amage or surface corrosion from the environment . . . [c]osmetic conditions or surface corrosion from stone chips or scratches in the paint . . . [n]ormal wear, tear or deterioration such as discoloration, fading, deformation, blur etc."  (Id. at 14-15).  The Warranty also states that "[a]ny financial loss, for example: due to loss of use of the Mazda Vehicle, lodging, transportation, travel costs, loss of pay and any other expenses or damages" are also not covered.  (Id. at 15).

Defendants have also provided two invoices – one dated April 13, 2015, showing repairs made to the underside of the seats and to the rear suspension under the Warranty based on two of plaintiff's complaints, with no cost charged to plaintiff.  (See Ex. F; Ex. G[16]).  The second invoice, dated May 2, 2015, does not specify the repairs made, but plaintiff states that the metal-on-metal grinding noise was corrected on May 2, 2015.  (See Pl.'s Mem. at 13; Ex. D at 79-80; Ex. G).

2)  Implied Warranty of Merchantability

Plaintiff also raises an implied warranty of merchantability claim with regard to all six of her complaints; defendant moves for summary judgment on each of these claims.

---

[16] Citations to "Ex. G" refer to the May 2, 2015 Invoice from Manfredi Auto Group, filed July 6, 2018 as Exhibit G to Defendant's Motion for Summary Judgment, ECF No. 48-8, showing replacement parts ordered for the Vehicle.

The UCC provides that "a warranty that goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." N.Y. U.C.C. § 2-314(1). Article 2-314(2) of the UCC governs plaintiff's claimed breach of the implied warranty of merchantability and provides that a manufacturer may be liable when its product is not "fit for the ordinary purposes for which such goods are used." N.Y. U.C.C. § 2-314(2)(c); see Porrazzo v. Bumble Bee Foods, LLC, 822 F. Supp. 2d at 415 (holding that "under New York law, a manufacturer may be held liable for breach of implied warranty of merchantability when its products are not 'fit for the ordinary purposes for which such goods are used.'" (quoting N.Y. U.C.C.§ 2-314(2)(c))); see also Derienzo v. Trek Bicycle Corp., 376 F. Supp. 2d 537, 570 (S.D.N.Y. 2005).

The focus of such a claim is whether the product "meets the expectations for the performance of the product when used in the customary, usual and reasonably foreseeable manners." Denny v. Ford Motor Co., 87 N.Y.2d 248, 258-59, 662 N.E.2d 730, 639 N.Y.S.2d 250 (1995); see also Porrazzo v. Bumble Bee Foods, LLC, 822 F. Supp. 2d at 417. Where the purchased product is an automobile, courts have held that a vehicle's ordinary purpose is transportation. Kail v. Wolf Appliance, Inc., No. 15 CV 3513, 2017 WL 3608242 (E.D.N.Y. Aug. 21, 2017). See also Jackson v. Eddy's LI RV Center, Inc., 845 F. Supp. 2d 523, 531 (E.D.N.Y. 2012) (holding that a vehicle's ordinary purpose is "to enable the purchaser to transport herself upon the streets and highways . . . in a reasonably safe manner"); Enobakhare v. Carpoint, LLC, No. 08 CV 4798, 2011 WL 703920, at *9 (E.D.N.Y. Jan. 10, 2011), report and recommendation adopted, 2011 WL 704902 (E.D.N.Y. Feb. 16, 2011); Diaz v. Paragon Motors of Woodside, Inc., 424 F. Supp. 2d at 541 (quoting McCormack v. Lynn Imports, Inc., 452 N.Y.S.2d 821, 824 (N.Y. Dist. Ct. 1982)).

To "succeed on an implied warranty claim, the plaintiff 'must show both the existence and breadth of the warranty and that the breach was the proximate cause of plaintiff's damages.'" Mahoney v. Endo Health Solutions, Inc., 2016 WL 3951185, at *4 (S.D.N.Y. July 20, 2016) (quoting Bellevue S. Associates v. HRH Const. Corp., 78 N.Y. 2d 282, 298 (1991)).

The plaintiff must also establish "that the danger inherent in the injurious product was not open and obvious and thus something with which a reasonable consumer would ordinarily anticipate finding there." Porrazzo v. Bumble Bee Foods, LLC, 822 F. Supp. 2d at 418 (citing Langiulli v. Bumble Bee Seafood, Inc., 159 Misc. 2d 1020, 1021 (Sup. Ct. 1993)). Ordinarily, the question of whether one would reasonably anticipate the danger to be present is a question for the jury. Rudloff v. Wendy's Rest., 12 Misc. 3d 1081, 821 N.Y.S.2d 358, 369 (City Ct. Buffalo 2006). However, in a breach of implied warranty action, the question of whether there were feasible safer alternative designs is irrelevant.[17] See Bah v. Nordson Corp., No. 00 CV 9060, 2005 WL 1813023, at *13 (S.D.N.Y. Aug. 1, 2005); Groome v. Matsushita Elec. Corp. of America, No. 92 CV 3073, 2000 WL 341134, at *6 (E.D.N.Y. Mar. 30, 2000).

New York courts have found noxious fumes, defective brakes, and faulty engines to rise to the level of preventing consumers from using vehicles for their ordinary purpose. See Enobakhare v. Carpoint, LLC, 2011 WL 703920, at *9 (finding that allegations that a "car had serious engine problems and emitted hot air, choking smoke, and a foul odor" made it "reasonable to infer that the car was not fit for its ordinary purpose"); Diaz v. Paragon Motors of Woodside, Inc., 424 F. Supp. 2d at 541 (finding plaintiff's statement that the brakes on his vehicle did not work properly raised a question of fact that an implied warranty was violated); Stream v. Sportscar Salon, LTD., 397 N.Y.S.2d 677 (Civ. Ct. Queens Cty July 25, 1977) (finding

---

[17] See discussion supra at 14-16.

violation of implied warranty when a car continued to break down due to a defective engine); State Farm Mut. Auto Ins. Co. v. Croyle Enters., Inc., 848 N.Y.S.2d 414, 46 A.D.3d 1167 (3d Dep't Dec. 20, 2007) (finding that a car catching on fire mid-drive was a violation); but cf. McNally v. Chrysler Motors Corp., 284 N.Y.S.2d 761 (Sup. Ct. Kings Cty Nov. 22, 1967) (finding that the failure of brakes during the operation of the car did not rise to the level of violating an implied warranty); Fillet v. Curry, 12 A.D.2d 519, 207 N.Y.S.2d 522 (2d Dep't Nov. 21, 1960) (holding that difficulty starting the vehicle did not violate implied warranty).

Issues that do not rise to the level of completely preventing a vehicle's operation may still violate the implied warranty of merchantability in some circumstances. See Kail v. Wolf Appliance, Inc., 2017 WL 3608242, at *6 (stating that "even if the car is fit for a daily commute . . . it may still violate the implied warranty of merchantability if the car 'smells, lurches, clanks, and emits smoke over an extended period of time'") (citing Isip v. Mercedes-Benz USA, LCC, 155 Cal. App. 4th 19, 27, 65 Cal. Rptr. 3d 695, 700 (Cal. App. 2007))). Cosmetic damages that do not impact functionality, however, do not violate the implied warranty of merchantability. (Id. (citing Carey v. Chaparral Boats, Inc., 514 F. Supp. 2d 1152, 1155-65 (D. Minn. 2007) (granting summary judgment because "the overwhelming evidence demonstrate[d] that the cracks in the boat's finish are a cosmetic problem and in no way impact the boat's ordinary use")).

Here, plaintiff alleges that defendant "impliedly warranted that Plaintiff's Vehicle would be fit for the use intended" and that at the time it was placed into the stream of commerce, the Vehicle had "serious defects" that have "caused economic and physical injuries to Plaintiff." (Compl. ¶¶ 47-49). Plaintiff alleges six individual defects and asserts that she sustained economic and physical injuries, but, with the exception of the hand injury allegedly caused by

the protruding metal under the seat, she does not explain how each of the additional alleged defects individually caused economic or physical injuries to plaintiff.

Defendant moves for summary judgment on all of plaintiff's express and implied warranty claims. Plaintiff's warranty claims as to each of the alleged defects will be addressed separately below.

a) Hand Injury

Plaintiff claims that defendant breached the express warranty set forth in the Limited Warranty terms that the Vehicle is "free from defects in material or workmanship" when it supplied a car with defects under the seat. As discussed supra, plaintiff has put forth evidence to support her claim that she sustained a laceration to her thumb caused by protruding pieces of sharp metal on the underside of the front passenger seat. (Pl.'s Mem. at 4). Plaintiff has also proffered evidence that the underside of the seat was not "free from defects in material or workmanship," and that plaintiff relied on defendant's express warranty that the seat was "free from defects." Although defendant argues that the seat had no defects in material or workmanship, this Court finds that plaintiff has raised issues of material fact as to whether there were defects under the seat in the form of sharp metal parts that proximately caused her injury.

In addition to this disputed issue, defendant argues that, given the plastic trim around the seat and the fact that the seat is raised off the floor of the Vehicle, there was no breach of the express warranty because it was not foreseeable that someone would put their hand under the seat. This is an issue for the trier of fact, who must consider from the conflicting evidence whether anything prevented plaintiff from putting her hand under the seat. There is a genuine dispute of fact from which a jury must determine whether using the Vehicle in a manner consistent with its intended purpose includes putting one's hand under the seat even with the

barriers that defendant alleges were there to prevent that act.  Given the numerous issues of disputed fact, the Court respectfully recommends that defendant's motion for summary judgment with respect to the express warranty claim relating to the underside of the front passenger seat be denied.

As for the claim that the underside of the seat also breached the warranty of implied merchantability, plaintiff must show that the product was not "fit for the ordinary purposes for which such goods are used."  N.Y. U.C.C. § 2-314(2)(c).  Although defendant argues that the Vehicle was manufactured in such a way to eliminate the need for someone to reach under the seat – citing the raised floor section and plastic barriers as examples – it is up to the jury to determine whether it was reasonably foreseeable that someone would place their hands under the seat and whether reaching under the seat – for example, as plaintiff allegedly did to obtain her cell phone – would be necessary in order to operate the Vehicle.  Plaintiff has raised facts, including the location of the sharp metal pieces, sufficient for a jury to determine if the danger inherent in the injurious product was open and obvious and thus something which a reasonable consumer would ordinarily anticipate finding.  It will be up to the jury to consider whether such a condition, if it existed, interfered with plaintiff's ability to operate the Vehicle in a safe and typical manner.

Having considered the evidence presented in support of the motion for summary judgment, as well as that opposing it, it is respectfully recommended that plaintiff be allowed to proceed on her claim of breach of implied warranty as to the underside of the seat.

b)  Keyless Entry

Defendant also moves for summary judgment on plaintiff's warranty claims relating to the keyless entry system.  (Def.'s Mem. at 12-13).  According to defendant, plaintiff has failed to

present any evidence that the issues complained of by plaintiff were due to a malfunction of the keyless entry feature.  (Id. at 12).

Defendant notes that plaintiff brought the issue of the keyless entry to the attention of the technician at the Manfredi Auto Group, who inspected it and could not "duplicate [the] cust[omer] concern" and who concluded "no fault found at this time."  (See Ex. F).  Defendant also points to the Vehicle Operations Manual which explains that the keyless entry feature may not function properly when the key is carried with other devices such as cell phones.  (Def.'s 56.1 Stmnt ¶ 13 (citing Ex. J[18])).  Plaintiff testified that she carried the key in her pocketbook with her phone even though the Vehicle operation manual explicitly warns that the transmitter may not operate correctly when the transmitter is in the vicinity of other electronic devices, such as cell phones.  (Id. (citing Ex. D at 98-99; Ex. J at 3-2)).

The manual further explains that the system does not operate, and the "key not found" message comes on, if the push button start is switched to any position other than off.  (Id. ¶ 14 (citing Ex. J)).  According to her testimony, plaintiff did not recall what position the push button start was in at the time of the incidents.  (Id. ¶ 15; Ex. D at 97-98, 102; Pl.'s 56.1 Stmnt ¶ 15).

Another possible explanation was the key battery was low.  Defendant claims that during the inspections conducted by Mr. Arst, the "key battery is low" message was displayed on the dashboard of the Vehicle; Arst determined that the message had been occurring for about a year prior to his inspection in February 2017.  (Arst Aff. ¶ 8).  Although plaintiff conceded that she had seen the message, she did not take any steps to replace the battery.  (Def.'s 56.1 Stmnt ¶ 17; Ex. D at 93-94; Pl.'s 56.1 Stmnt ¶ 17).

_____

[18] Citations to "Ex. J" refer to the Mazda Manual, filed July 6, 2018 as Exhibit J to Defendant's Motion for Summary Judgment, ECF No. 48-11.

Defendant argues that since plaintiff cannot demonstrate what caused the keyless entry to malfunction and since any one of these causes may have prevented the keyless entry from operating properly, plaintiff cannot sustain her burden to show that the keyless entry system was defective.  Defendant argues that in the absence of proof that there was any defect in material or in workmanship as to the keyless entry, she cannot demonstrate that there was breach of any warranty, and therefore summary judgment should be entered in defendant's favor on this issue.

Plaintiff does not offer any evidence in response to defendant's arguments that might demonstrate that the keyless entry was defective, and she admits that she did not seek to have the Vehicle serviced when she observed the "keyless battery is low" message on a "few occasions." (Pl.'s Mem. at 13).  Although plaintiff told the Mazda service technician on April 13, 2015 that the keyless entry was not working, she does not indicate whether she informed them of the low battery message.  (See Ex. F).  Indeed, she never explains why she did not attempt to determine what the battery low message meant, or why she took no steps to change the battery.  In the absence of some further showing beyond her uncorroborated claim that the keyless entry was a "defective and unreliable product," plaintiff has not demonstrated that there are any material issues of fact in dispute that would warrant a trial on her claim that defendant breached the Vehicle's express warranty based on the keyless entry system.  (Id.)  Absent any genuine dispute of fact that there even was a defect, plaintiff's claim that defendant breached an express warranty[19] with regard to the keyless entry system should be dismissed.

For the reasons discussed supra, given that plaintiff has failed to provide evidence to substantiate her allegations with respect to a defect in the keyless entry system, the same issues

_____

[19] As with the remaining breach of express warranty claims, the plaintiff has failed to identify how the particular complaints she describes breached the terms of any express warranty associated with this Vehicle.

are present when her claim of implied warranty of merchantability is considered.  Apart from

plaintiff's claim that on several occasions, she was unable to enter the Vehicle "for a few

minutes" when using the keyless entry system because it allegedly malfunctioned, plaintiff has

failed to present facts that would demonstrate how the keyless entry issues otherwise interfered

with the performance of the Vehicle.  Plaintiff testified that while there was one instance in

which she was unable to open her car door to retrieve an item because of the issues with the

keyless entry system, later that same day she "realized you can open up the remote and there is

[a] key in there so you could get in that way" at which point the "key worked as normal."  (Ex. D

at 97-98).  When asked if there were other occasions in which she was locked out of the car,

plaintiff testified that "it was at least another time where [she] wanted to get back into the car,

but at that point [she] already knew about the key . . . so it wasn't a problem as far as that goes."

(Id. at 102-03).

Plaintiff has therefore failed to raise sufficient facts to demonstrate that she was unable to

enter or start the vehicle, let alone that the keyless entry issues prevented her from using the

Vehicle in its customary manner.  See Fillet v. Curry, 12 A.D.2d at 519, 207 N.Y.S.2d at 522

(holding that difficulty starting a vehicle did not violate an implied warranty).

The Court therefore respectfully recommends that defendant's motion for summary

judgment seeking to dismiss plaintiff's breach of express and implied warranty claims with

regard to the keyless entry system be granted.

c)  Squeaking Noise and Metal on Metal Grinding

Plaintiff alleges that when she turned the wheel to the left, there was a "metal-on-metal

grinding" noise and the Vehicle made a "squeaking noise" when it travelled over safety bumps.

(Compl. ¶¶ 25, 31).  Defendant contends that there is no dispute that, per the Limited Warranty,

both noises that plaintiff alleges have been addressed by defendant at no cost to plaintiff and that plaintiff's complaints have not continued following those repairs.  (Def.'s Mem. at 11; Ex. F). Specifically, at her deposition, plaintiff conceded that the problems with the squeaking and metal-on-metal noises had been resolved through replacements or repairs made by the dealer. (Ex. D at 79-81, 87-88, 91).  Plaintiff also admitted during her deposition that, after defendant undertook to perform the warranty replacements of the inner left tie rod and rear passenger side strut, she had no further issues.  (Def.'s Mem. at 11 (citing Ex. D at 79, 80-81, 87-88, 91)). Thus, defendant argues that it is entitled to summary judgment on this claim relating to noise complaints because defendant made good on its warranty and repaired or replaced the parts.  (Id. (citing Diaz v. Your Favorite Auto RPR & DI, 2012 WL 1957750)).

In response, plaintiff concedes that the squeaking noise was corrected on April 13, 2015 and that the metal-on-metal grinding noise was corrected on May 2, 2015.  (Pl.'s Mem. at 13; Ex. F; Ex. G).  However, she fails to address defendant's argument that because the problems were fixed, there can be no breach of warranty claim.

The Court finds that plaintiff has failed to raise a triable issue of fact regarding this breach of express warranty complaint.  Given that plaintiff admits defendant acted in compliance with the Warranty to repair the problems, and that these issues no longer persist, plaintiff has failed to submit evidence that defendant breached the express Warranty and no disputed issue of fact has been raised for a jury to consider.  See Diaz v. Paragon Motors of Woodside, Inc., 424 F. Supp. 2d at 541.  The Court therefore respectfully recommends that defendant's motion for summary judgment with respect to plaintiff's claimed breach of the express warranty based on both the squeaking noise and metal-on-metal grinding noise be granted.

Similarly, the Court respectfully recommends that plaintiff's breach of implied warranty based on these noises be dismissed as well. Even if plaintiff could establish that there was a breach of the warranty, she does not provide any explanation as to how she was "injured" by these alleged squeaking and grinding noises, nor does she claim that she was unable to operate the Vehicle because of these noises. These noises, which defendant promptly fixed at no cost to plaintiff, and which no longer exist, do not rise to the level of the type of problem that would interfere with the typical performance of a vehicle. As plaintiff has provided no additional facts as to why these noises prevented her from using the Vehicle in a safe manner, as well as absent any indication of any injury or expense to plaintiff as a result of the noise, the Court respectfully recommends that no reasonable juror could find the noises constituted a violation of the implied warranty of merchantability. Accordingly, it is respectfully recommended that summary judgment should be granted in defendant's favor on this claim.

d) <u>Paint Defects</u>

Defendant also moves for summary judgment on plaintiff's alleged breach of warranty claims based on an alleged paint defect on the vehicle. (Def.'s Mem. at 10). With respect to her complaint about the defect in the paint, defendant notes that plaintiff operates her car in New York City, parks it near her home in Brooklyn and near her job in lower Manhattan, and that she was hit while parked, sustaining damage to the side panel, right light and bumper. (Def.'s 56.1 Stmnt ¶¶ 6-8 (citing Ex. D at 32-33; Ex. C at 8)). Plaintiff has conceded that the car was hit at least once while parked and sustained damage to the rear light and bumper. (Def.'s Mem. at 5 (citing Ex. C at 8); Pl.'s 56.1 Stmnt ¶ 8).

More importantly, during her deposition, plaintiff was shown photographs of the Vehicle, but she could not see the paint defect, nor could she identify the defect during the inspection

conducted by Thomas Daum, Technical Operations Manager for defendant.  (Def.'s 56.1 Stmnt ¶¶ 9, 10; Ex. D at 61-64; see also Ex. E at 125).  Plaintiff raised the concern with the defect when she brought the Vehicle to the Mazda service center on April 13, 2015, where the technician concluded that there was "damage to face & top of bumper" which was "not covered by [the] factory defect warranty."  (Ex. F).

According to defendant's liability expert, Jason Arst, he also inspected plaintiff's Vehicle twice, once on February 24, 2017 and again on April 20, 2017; he was unable to identify any paint defect that could be attributed to the manufacturing process.  (Arst Aff. ¶¶ 5, 7).  Although Mr. Arst did observe "contact marks" on the car, defendant argues that these are typical for a car operated in the urban environment where plaintiff drives.  (Def.'s Mem. at 11).

In arguing for summary judgment on plaintiff's warranty claims with respect to the alleged "paint defect," defendant points to the inability of plaintiff or anyone else to identify the defect either during inspection or on any of the photographs.  (Id. (citing Ex. D at 61-64); Ex. E at 125; Arst Aff. ¶ 7).  Thus, defendant argues that plaintiff has failed to present any evidence that this alleged paint defect existed at the time the car left the defendant's control.

Once again, plaintiff's response to defendant's citations to the facts is to simply allege that there was a "dent – a defect, which optically, presented as a paint defect that was visible only when the sun shown on the dent."  (Pl.'s Mem. at 15).  She claims that the "dent" was located on the rear bumper and was "linear and few inches long."  (Id. (citing Ex. D at 60-61)).  The Oxford English Dictionary defines "dent" as "a slight hollow in a hard even surface made by a blow or pressure."  Dent, Oxford English Dictionary (3rd ed. 2000).  Although plaintiff was not able to locate the alleged dent on photographs or when she inspected the vehicle and no one else could find it either, nowhere in her papers does she explain what happened to this "dent" or

"indentation" in the surface of her vehicle.   It is unclear what evidence she intends to rely on in arguing that there was a defect in the paint.

Moreover, defendant contends that even if plaintiff were able to locate the alleged paint defect, such a defect falls outside the scope of the New Vehicle Limited Warranty issued by defendant at the time of purchase.  (Def.'s Mem. at 12).  That Warranty by its terms does not apply to "cosmetic conditions or surface corrosion from stone chips or scratches in the paint," or to "normal wear, tear, or deterioration such as discoloration, fading, deformation, blur etc."  (Ex. M at 14-15).  In the absence of any evidence to demonstrate that a defect in the paint existed at the time the car was delivered to plaintiff, or that there even was such a defect that falls within the Warranty, the Court finds there are no facts upon which a jury could rely to find that the defendant was in violation of any express warranty as such damages were expressly disclaimed under the Warranty.  Similarly, there can be no breach of implied warranty of merchantability because plaintiff has failed to allege, much less present evidence to support a claim, that such a minor defect in the exterior paint, even if it did exist, had any impact on plaintiff's ability to operate the car.

Accordingly, the Court respectfully recommends that defendant's motion for summary judgment with respect to the warranty claims based on alleged paint defects be granted.

e) Seat Heaters

Plaintiff raises breach of warranty claims regarding the length of time it allegedly takes the seat warmer in the Vehicle to heat up.  In moving for summary judgment on these claims, defendant notes that there are no industry standards as to how quickly seat warmers should reach a certain temperature, and Mazda made no representations in that regard.  (Def.'s 56.1 Stmnt ¶¶ 18, 19).  Defendant contends that there is no dispute that it never warranted that the seat should

reach a certain temperature within a certain period of time.  (Def.'s Mem. at 13; Arst Aff. ¶ 9).

According to defendant, the performance of the seat warmer depends on a variety of factors,

including the ambient temperature.  (Def.'s 56.1 Stmnt ¶ 19 (citing Arst Aff. ¶ 10)).

Defendant represents that Manfredi Auto Group, the Mazda service center in Staten

Island where plaintiff brought the Vehicle, inspected the seat warmer and found it to be working

properly.  (Id. ¶ 20 (citing Arst Aff. ¶ 9, Ex. E at 132); Ex. D at 21; Ex. F).  Similarly, both Mr.

Arst and Mr. Daum conducted an inspection and determined that the seat warmer was working

properly.  (Def.'s Mem. at 13 (citing Arst Aff. ¶ 9 (finding that once the seat warmer was turned

on, the temperature rose rapidly and there was no delay))).  Mr. Arst also found that the Mazda

exemplar operated in a similar fashion.  (Id. at 14).

Plaintiff has proffered the opinion of Dr. Lear to support her claim.  Dr. Lear reviewed

the relevant records and inspected and tested plaintiff's Mazda and a "similar peer vehicle, a

2016 Toyota RAV- 4."  (Lear Aff. ¶¶ 5, 6).  According to Dr. Lear, he used an ETELCITY

thermometer to determine that the "seat heater performance [of the Vehicle] was much slower

than the 5-10 minutes most comparable seat heaters require to warm."  (Id. ¶ 7).  Dr. Lear opined

that "the current seat warmer is not a [sic] reasonably functional," because "the heating

temperatures are inconsistent and unreliable."  (Id. ¶ 13).

Defendant notes that according to his curriculum vitae, Dr. Lear is not an engineer; he is

an educator.  (Ex. L at 42-45).  With respect to the plaintiff's claim of defect in the seat warmer,

Dr. Lear could not identify a specific temperature the seat should have reached nor a specific

time period in which the warmer should have reached that temperature.  During his deposition,

he testified that "it probably should have been gotten close to body temperature in two or three

minutes, but it failed."  (Id. at 105-106).  When asked specifically if a properly functioning seat

warmer should reach 98.6 degrees, Dr. Lear declined to "go to that detail." (Id.)  Instead, he testified that "it should warm the person up so that they're satisfied.  The statistics of how it should be, I'm not going to give.  I just know that it's more than 80. . . . I can't give the exact temperature."  (Id.)  He conceded that he did not research the top temperature the seat should have gotten to.  (Id. at 106).  His opinion was based on his own personal experience and recollection of sitting in other seats: "Because I'm temperature-sensitive too.  I felt that seat and I've felt other seats that I've had experience with.  I haven't measured them but I felt them."  (Id.)

Expert testimony may only be admitted at trial if it will "assist the trier of fact to understand the evidence or to determine a fact in issue."  Fed. R. Evid. 702.  The trial court is required to ensure that "'an expert's testimony both rests on a reliable foundation and is relevant to the task at hand.'"  Zaremba v. General Motors Corp., 360 F. 3d 355, 358 (2d Cir. 2004) (citing Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 597 (1993)).  It is the obligation of the court to engage in this gatekeeping function for all expert testimony and the court has "'the same kind of latitude in deciding how to test an expert's reliability . . . as it enjoys when it decides whether that expert's relevant testimony is reliable.'"  Id. (citing Kumho Tire Co., Ltd., v. Carmichael, 526 U.S. 137, 138 (1999)).

Based on Dr. Lear's testimony, the Court finds that plaintiff's proffered expert opinion in this regard would not likely survive a Daubert challenge under Rule 702 because Dr. Lear failed to provide any "scientific, technical, or other specialized knowledge," to support his opinion, see Kumho Tire Co., Ltd., v. Carmichael, 526 U.S. 137, 138 (1999); rather, he literally was opining from the "seat of his pants."  (Ex. L at 106 (stating: "I'm temperature-sensitive too.  I felt that seat and I've felt other seats")).

Even if Dr. Lear were permitted to opine that the seat should have warmed up faster, there is no evidence to support a claim that the Warranty was breached. The vagueness of his opinion and his inability to identify a specific temperature or even time period in which the seat should reach that temperature is insufficient to demonstrate that there was a "defect" in the seat or that defendant breached a promise as to how the seat warmer was expected to operate.

With no admissible credible expert testimony, plaintiff has not raised any triable issue of fact as to the seat warmer violating any express warranty. The Court therefore respectfully recommends that defendant's motion for summary judgment with respect to the express warranty claim as to the operation of the seat heater be granted.

For the reasons stated supra, the Court also finds that plaintiff has failed to put forward evidence to support her claim that the condition of the seat warmer prevented her from operating the vehicle in a safe and reasonable manner. Indeed, the complaint raised by plaintiff was not that the seat warmer did not work at all but rather that it did not heat up fast enough to her liking. She has not alleged that this rendered the Vehicle not fit to drive. Given that plaintiff has not raised any evidence upon which the Court could find an issue of fact in dispute as to whether the seat warmer rendered the Vehicle unfit for its ordinary purpose, the Court respectfully recommends that defendant's motion for summary judgment on the plaintiff's implied warranty claim as to the seat warmer also be granted.

<u>CONCLUSION</u>

The Court respectfully recommends summary judgment be granted on all of plaintiff's express and implied warranty claims with the exception of her alleged hand injury, and that summary judgment be granted to the extent that plaintiff seeks to allege a design defect claim. The Court also respectfully recommends that plaintiff be allowed to proceed on her express and

implied warranty claims with respect to the alleged hand injury claims only and on her

manufacturing defect claim.

Any objections to this Report and Recommendation must be filed with the Clerk of the

Court within fourteen (14) days.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); see also

Fed. R. Civ. P. 6(a), (e) (providing the method for computing time).  Failure to file objections

within the specified time waives the right to appeal the District Court's order.  See, e.g., Caidor

v. Onondaga Cty., 517 F.3d 601, 604 (2d Cir. 2008) (explaining that "failure to object timely to a

. . . report [and recommendation] operates as a waiver of any further judicial review of the

magistrate [judge's] decision").

The Clerk is directed to send copies of this Order to the parties either electronically

through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**

Dated: Brooklyn, New York
      March 6, 2019

                             /s/ Cheryl L. Pollak
                             Cheryl L. Pollak
                             United States Magistrate Judge
                             Eastern District of New York