UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------

SARA BERGER,

       Plaintiff,         **MEMORANDUM & ORDER**
                         16-CV-1835 (MKB) (CLP)
    v.

MAZDA MOTOR OF AMERICA, INC.,

       Defendant.

------------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

  Plaintiff Sara Berger filed the above-captioned action on November 24, 2015, against Defendant Mazda Motor of America, Inc., in the New York State Supreme Court, County of Kings. (Notice of Removal, Docket Entry No. 1; Compl., annexed to Notice of Removal as Ex. A, Docket Entry No. 1-1.) Plaintiff alleges that she suffered an injury as a result of a defective vehicle she purchased from Defendant and also contends that because of the vehicle's defective conditions, Defendant breached the express and implied warranties of merchantability. (Compl.) On July 6, 2018, Defendant moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. (Def. Mot. for Summ. J. ("Def. Mot."), Docket Entry No. 48; Def. Mem. of Law in Supp. of Def. Mot. ("Def. Mem."), Docket Entry No. 48-16.) Plaintiff opposed the motion. (Pl. Mem. of Law in Opp'n to Def. Mot. ("Pl. Opp'n"), Docket Entry No. 45.) On August 8, 2018, the Court referred Defendant's motion to Magistrate Judge Cheryl L. Pollak for a report and recommendation.

  By report and recommendation dated March 6, 2019, Judge Pollak recommended that the Court grant in part and deny in part Defendant's motion for summary judgment (the "R&R"). (R&R, Docket Entry No. 50.) For the reasons set forth below, the Court grants in part and denies

in part Defendant's motion for summary judgment. The Court denies Defendant's motion as to Plaintiff's manufacturing defect and breach of express warranty claims as they relate to the passenger side seat. The Court grants Defendant's motion as to Plaintiff's remaining claims.

## I. Background

### a. Factual background

The facts are undisputed, unless otherwise noted. In August of 2014, Plaintiff purchased a 2015 Mazda CX-5 Grand Touring SUV (the "Vehicle") from an authorized Mazda dealership for $35,000 and financed $22,000 of the purchase price. (Defendant's Rule 56.1 Statement of Undisputed Material Facts ("Def. 56.1") ¶ 1, Docket Entry No. 48-17; Pl. Response to Def. 56.1 ("Pl. Resp. 56.1") ¶ 1, Docket Entry No. 46.) Plaintiff purchased the Vehicle after researching and test driving several other vehicles, and, although she liked some of those other vehicles better than the Vehicle, she "settled" on the Vehicle because it was within her budget. (Def. 56.1 ¶ 2; Pl. Resp. 56.1 ¶ 2.) Shortly after Plaintiff purchased the Vehicle, the dealership closed; Plaintiff would not have purchased the Vehicle from that dealership had she known it would close so soon after her purchase. (Def. 56.1 ¶ 2; Pl. Resp. 56.1 ¶ 2.)

Plaintiff drives the Vehicle in New York City and parks it near her home in Brooklyn, New York. (Def. 56.1 ¶ 6; Pl. Resp. 56.1 ¶ 6.)

#### i. Vehicle warranty

The Vehicle came with a New Vehicle Limited Warranty promising that the Vehicle was "free from defects in material or workmanship," and that "a Mazda Dealer will make necessary repairs, using new or remanufactured parts, to correct any problem covered by this warranty without charge to" Plaintiff. (Def. 56.1 ¶ 3; Pl. Resp. 56.1 ¶ 3); New Vehicle Limited Warranty 12, annexed to Def. Mot. as Ex. M, Docket Entry No. 48-14.)

### ii. Plaintiff's injury

On March 11, 2015, Plaintiff was sitting in the driver's seat of the Vehicle while parked on the street. (Dep. of Sara Berger ("Berger Dep.") 113, annexed to Def. Mot. as Ex. D, Docket Entry No. 48-5.) Plaintiff was getting ready to exit the Vehicle when she reached for her cellular telephone under the passenger side seat and sustained a laceration to her left thumb, which required six stitches.[1] (Def. 56.1 ¶ 21; Pl. Resp. 56.1 ¶ 21; Berger Dep. 114:24–25, 115:4–9, 157:14–19.) Plaintiff contends that the injury was caused "by the protruding sharp metal on the underside of the front passenger side seat" of the Vehicle. (Pl. Resp. 56.1 ¶ 21.) At the time of the incident, the interior of the Vehicle was well lit. (Berger Dep. 150:7.) Plaintiff looked at the area under the seat to determine what caused the injury. (Berger Dep. 150:11.) Plaintiff testified that "nothing ever happened to her" when reaching under the passenger side seat "in her other car." (Pl. Resp. 56.1 ¶ 21; Berger Dep. 112:4–12, 113:8–10.) The injury left Plaintiff with an approximately one and one-half inch scar on the right side of her left thumb. (Def. 56.1 ¶ 21; Pl. Resp. 56.1 ¶ 21.)

Defendant contends that when Plaintiff sustained the cut, she did not feel "contact with any part of the under-seat assembly," (Def. 56.1 ¶ 21), and did not check to determine what caused her injury, (Def. 56.1 ¶ 22; Pl. Resp. 56.1 ¶ 22; Berger Dep. 150:11–15). Defendant also states that the Vehicle's passenger side "seat has plastic trim which wraps around both the inside and outside of the lower sides of the seat covering the seat structure and adjusting mechanisms under the seat" and the "seat track adjuster lever, where one would expect a user to place his or hands [sic], was across the middle forward are [sic] of the seat and had a smooth surface." (Def. 56.1 ¶ 23.)

---

[1] Plaintiff could not recall how her cellular telephone ended up under the passenger side seat. (Berger Dep. 116–17.)

3

In April of 2015, repairs were made to the Vehicle's front passenger seat. An invoice report from Manfredi Auto Group, a dealer in Staten Island, dated April 13, 2015 states that tape was installed "over sharp arm" under the driver and front passenger side seats. (Manfredi Auto Group Invoice ("April 2015 Invoice"), annexed to Graves Decl. as Ex. F, Docket Entry No. 48-7.)

### iii. Plaintiff's expert

On September 9, 2017, Plaintiff's expert, Dr. George M. Lear, conducted an inspection and testing of the seat projections and edges of the Vehicle. (Pl. Resp. 56.1 ¶ 23; Aff. of Dr. George M. Lear ("Lear Aff.") ¶ 8, annexed to Decl. of Marshall B. Bellovin ("Bellovin Decl.") as Ex. B, Docket Entry No. 47-1.) Plaintiff reenacted the incident that gave rise to her injury to assist Dr. Lear's inspection and testing of the passenger side seat. (Lear Aff. ¶ 8.)

In conducting his examination, Dr. Lear found "a number of sharp edges on the underside of the front passenger seat and at least two sharp points that could cause the type of injury Plaintiff suffered in this case." (Pl. Resp. 56.1 ¶ 23–24; Lear Aff. ¶ 8.) Dr. Lear also found that one of the attachment bolts in the front passenger seat was "severely damaged." (Lear Aff. ¶ 9.) "[T]he damaged bolt was removed and replaced with a hex head bolt." (*Id.*) Dr. Lear concluded that the "protruding sharp edges on the underside of the front passenger seat is not a reasonably safe, state-of-the-art product or design — as manufactured or distributed." (*Id.* ¶ 12.)

### iv. Other alleged defective conditions

#### 1. April and May of 2015 replacements

On April 13, 2015, Manfredi Auto Group replaced the Vehicle's right rear shock absorber "as a warranty item," after Plaintiff complained of a squeaking noise. (Def. 56.1 ¶ 4; Pl. Resp. 56.1 ¶ 4.) The replacement resolved Plaintiff's complaint. (Def. 56.1 ¶ 4; Pl. Resp. 56.1 ¶ 4.)

Several weeks later, on May 2, 2015, Manfredi Auto Group replaced the Vehicle's left front inner tire rod, "also as a warranty item," in response to Plaintiff's complaints of a metal-on-metal grinding noise, which stopped after the repair was completed. (Def. 56.1 ¶ 5; Pl. Resp. 56.1 ¶ 5.)

### 2. Alleged damage to the Vehicle

In February,[2] the Vehicle was hit while it was parked and sustained damage to the "side panel, rear light and bumper." (Def. 56.1 ¶ 8; Pl. Resp. 56.1 ¶ 8; Pl. Am. Resp. to Interrog. 8, annexed to Def. Mot. as Ex. C, Docket Entry No. 48-4.) Plaintiff states that there was a dent "a few inches long" in the Vehicle that "presented as a paint defect" and was visible only in sunlight.

Defendant contends that Plaintiff could not identify the alleged defect in photographs of the Vehicle taken in varying lighting conditions, or on the Vehicle itself during a March 21, 2017 inspection of the Vehicle. (Def. 56.1 ¶¶ 9–10; Pl. Resp. 56.1 ¶ 9–10.) Defendant also contends that its expert, Jason Arst, inspected the Vehicle on February 24, 2017 and April 20, 2017, and was unable to identify "any paint defect that could be attributable to the manufacturing process." (Mazda 56.1 ¶ 11; Aff. of Jason Arst ("Arst Aff."), annexed to Decl. of Yelena Graves ("Graves Decl.") as Ex. K, Docket Entry No. 48-15.)

### 3. The keyless entry feature

Plaintiff contends that the keyless entry feature of the Vehicle did not work at times. As a result, Plaintiff was locked out of the Vehicle because of the "defective and unreliable keyless

---

[2] The parties do not identify the year.

entry feature" and had to wait until the message on the Vehicle's dashboard disappeared.[3] (Pl. Resp. 56.1 ¶ 12.) Defendant contends that when the keyless entry feature was not working, Plaintiff was still able to access the Vehicle using a "regular key" and the message "disappeared within hours." (Def. 56.1 ¶ 12; Berger Dep. 98:8–13.)

The Vehicle's operation manual states that the key transmitter "may not function correctly" when the device is carried with a cellular telephone or in other situations.[4] (Def. 56.1 ¶ 13; Pl. Resp. 56.1 ¶ 13.) In addition, the Vehicle operation manual specified that "[t]he keyless entry system is fully operational (door/liftgate lock/unlock) when the push button start is switched off. The system does not operate if the push button start is switched to any position other than off." (Def. 56.1 ¶ 14; Pl. Resp. 56.1 ¶ 14.) Plaintiff does not remember what position the push button was in when the keyless entry feature did not work. (Def. 56.1 ¶ 15; Pl. Resp. 56.1 ¶ 15.)

During Arst's inspection of the Vehicle, a "key battery is low" message appeared on the Vehicle's dashboard. (Def. 56.1 ¶ 16; Pl. Resp. 56 1 ¶ 16.) Utilizing a diagnostic tool to obtain the status of the Vehicle's electronic control systems, Arst learned that the "key battery is low" message had been occurring for approximately one year prior to the Vehicle's first inspection on February 24, 2017. (Def. 56.1 ¶ 17; Pl. Resp. 56.1 ¶ 17; Arst Aff. ¶ 8.) Plaintiff testified that the message appeared "for the first time a very short time after she got the car." (Pl. Resp. 56.1 ¶ 17.) Plaintiff observed the message and researched what kind of replacement battery the key needed, but did not replace the battery. (Def. 56.1 ¶ 17; Berger Dep. 93:6–94:25.)

---

[3] The message on the dashboard was that "the key was not recognized or found." (Def. 56.1 ¶ 12.

[4] Defendant alleges Plaintiff carried her cellular telephone in her pocketbook with the key. (Mazda 56.1 ¶ 13.)

#### 4. The seat warmer

Plaintiff also raises issues with the Vehicle's seat warmers. (Def. 56.1 ¶¶ 18–20; Pl. Resp. 56.1 ¶ 18.) She alleges that the seat warmers took longer than normal to heat up, as confirmed by Dr. Lear who observed that "the performance of the seat heater was found to be much slower than the [five] to [ten] minutes most seat heaters require to warm up." (Pl. Resp. 56.1 ¶ 18; Lear Report ¶ 7.) Defendant contends that there are no industry standards setting specific temperature requirements for seat warmers. (Def. 56.1 ¶ 18.). In addition, the performance of seat warmers is dependent on factors like ambient temperatures and clothing. (Def. 56.1 ¶ 18.) Further, an invoice from Manfredi Auto Group indicated that the seat warmer had been inspected and was "working properly"; Defendant's expert also determined that the seat warmer was working properly. (Def. 56.1 ¶¶ 18–20.)

#### 5. Contact marks

The Vehicle has some "contact marks" from other objects.[5] (Def. 56.1 ¶ 7; Pl. Resp. 56.1 ¶ 7.)

### b. Judge Pollak's recommendation

Judge Pollak recommended that the Court deny summary judgment as to Plaintiff's manufacturing defect claim with regard to her hand injury because genuine disputed issues of fact exist as to whether the seat was "physically flawed, damaged, or incorrectly assembled," at the time of manufacture. (R&R 12.)

As to Plaintiff's design defect claim, Judge Pollak recommended that, to the extent Plaintiff alleges a design defect claim with regard to the passenger side seat, the Court should

---

[5] Plaintiff admits that there are marks on the Vehicle but notes that the cause of these marks cannot be determined "beyond the extent that they were present at the time Jason Arst, Defendant's expert," inspected the Vehicle. (Pl. Resp. 56.1 ¶ 7.)

grant summary judgment as to this claim because Plaintiff failed to show the existence of an alternative design. (*Id*. at 16.)

In addition, Judge Pollak recommended that the Court deny Defendant's motion for summary judgment as to Plaintiff's express and implied warranty claims with regard to the front passenger side seat because a jury should decide whether the purported condition of the seat interfered with Plaintiff's ability to operate the Vehicle safely and in a typical manner. (*Id*. at 24.)

Judge Pollak further recommended that the Court grant summary judgment as to Plaintiff's claims for breach of express and implied warranty as to the keyless entry system, squeaking noise and metal on metal grinding, paint defects, and seat warmer. (*Id*. at 27–34.)

### c. Defendant's objections to the R&R

Defendant objects to Judge Pollak's conclusion that there are genuine issues of fact with regard to Plaintiff's manufacturing defect and breach of express and implied warranty claims pertaining to her hand injury. (Pl. Obj. to R&R ("Pl. Obj.") 1, Docket Entry No. 51.) Defendant argues that (1) Plaintiff failed to present facts showing that the alleged sharp metal pieces "were unintended as opposed to part of the Vehicle's design," (2) that the alleged sharp metal pieces did not interfere with Plaintiff's ability to drive the Vehicle, and (3) that, as to the breach of express warranty claim, the provided warranty cannot be triggered in the absence of a manufacturing defect. (*Id*. at 6–7.)

## II. Discussion

### a. Standards of review

#### i. Report and recommendation

A district court reviewing a magistrate judge's recommended ruling "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate

8

judge." 28 U.S.C. § 636(b)(1)(C). When a party submits a timely objection to a report and recommendation, the district court reviews *de novo* the parts of the report and recommendation to which the party objected. *Id.*; *see also United States v. Romano*, 794 F.3d 317, 340 (2d Cir. 2015). The district court may adopt those portions of the recommended ruling to which no timely objections have been made, provided no clear error is apparent from the face of the record. *John Hancock Life Ins. Co. v. Neuman*, No. 15-CV-1358, 2015 WL 7459920, at *1 (E.D.N.Y. Nov. 24, 2015). The clear error standard also applies when a party makes only conclusory or general objections. *Benitez v. Parmer*, 654 F. App'x 502, 503–04 (2d Cir. 2016) (holding "general objection[s] [to be] insufficient to obtain *de novo* review by [a] district court" (citations omitted)); *see* Fed. R. Civ. P. 72(b)(2) ("[A] party may serve and file *specific* written objections to the [magistrate judge's] proposed findings and recommendations." (emphasis added)); *see also Colvin v. Berryhill*, 734 F. App'x 756, 758, 2018 WL 2277791, at *1 (2d Cir. May 18, 2018) ("Merely referring the court to previously filed papers or arguments does not constitute an adequate objection under . . . Fed. R. Civ. P. 72(b)." (quoting *Mario v. P & C Food Mkts., Inc.*, 313 F.3d 758, 766 (2d Cir. 2002))).

    ii.   **Summary judgment**

Summary judgment is proper only when, construing the evidence in the light most favorable to the non-movant, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Wandering Dago, Inc. v. Destito*, 879 F.3d 20, 30 (2d Cir. 2018); *see also Cortes v. MTA NYC Transit*, 802 F.3d 226, 230 (2d Cir. 2015). The role of the court "is not to resolve disputed questions of fact but only to determine whether, as to any material issue, a genuine factual dispute exists." *Rogoz v. City of Hartford*, 796 F.3d 236, 245 (2d Cir. 2015) (first quoting *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010); and then citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50

9

(1986)). A genuine issue of fact exists when there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. The "mere existence of a scintilla of evidence" is not sufficient to defeat summary judgment. *Id.* The court's function is to decide "whether, after resolving all ambiguities and drawing all inferences in favor of the nonmoving party, a rational juror could find in favor of that party." *Pinto v. Allstate Ins. Co.*, 221 F.3d 394, 398 (2d Cir. 2000).

    **b.** **Unopposed portions of the R&R**

No party objects to Judge Pollak's recommendation that the Court grant summary judgment as to Plaintiff's design defect claim and all breach of warranties claims pertaining to the alleged paint defect, noise complaints, keyless entry issues, and seat warmer performance issues. The Court has reviewed the unopposed portions of R&R and, finding no clear error, the Court adopts them pursuant to 28 U.S.C. § 636(b)(1).

    **c.** **Manufacturing defect claim**

Defendant argues that Judge Pollak "misapprehended the nature of the manufacturing defect claim" and that Plaintiff failed to present evidence that the "sharp metal pieces were unintended and present a departure from the intended design" of the Vehicle. (Def. Obj. to the R&R ("Def. Obj.") 8, Docket Entry No. 51.)

Plaintiff argues that her deposition testimony and Dr. Lear's inspection of the Vehicle provide sufficient facts to support Plaintiff's claim that a manufacturing defect existed on the underside of the front passenger seat and that, as a result of the defect, she was injured. (Pl. Opp'n 6.)[6]

---

[6] Plaintiff did not file a response to Defendant's objections to the R&R. Nevertheless, the Court considers arguments Plaintiff made in response to Defendant's motion for summary judgment.

10

Under New York law, "a manufacturer of a defective product is liable for injuries caused by the defect." *In re New York City Asbestos Litig.*, 27 N.Y.3d 765, 786 (2016). "Under New York's modern approach to products liability, a product has a defect that renders the manufacturer liable for the resulting injuries if it: (1) "contains a manufacturing flaw"; (2) "is defectively designed"; or (3) "is not accompanied by adequate warnings for the use of the product." *Id.* (citing cases). There are four theories under which a plaintiff may pursue recovery based upon a claim of products liability: (1) strict liability, (2) negligence, (3) express warranty, and (4) implied warranty. *Oden v. Boston Sci. Corp.*, 330 F. Supp. 3d 877, 888 (E.D.N.Y. 2018) (citing *Hilaire v. DeWalt Indus. Tool Co.*, 54 F. Supp. 3d 223, 252 (E.D.N.Y. 2014)); *Voss v. Black & Decker Mfg. Co.*, 59 N.Y.2d 102, 106–07 (1983).

To prevail on a manufacturing defect claim under theories of strict liability, negligence, or breach of express or implied warranty, a plaintiff must allege that the specific product that caused the plaintiff's injury was not manufactured as designed or was not built to specifications. *See Tears v. Boston Scientific Corp.*, 344 F. Supp. 3d 500, 511 (S.D.N.Y. 2018); *see also Minda v. Biomet, Inc.*, 182 F.3d 900, 1999 WL 491877, at *1 (2d Cir. 1999) ("To prove the existence of a manufacturing defect, a plaintiff must establish that the product was not built to specifications or that it did not conform to the manufacturer's intended design."); *McCarthy v. Olin Corp.*, 119 F.3d 148, 154–55 (2d Cir. 1997) (finding that a "a manufacturing defect . . . results when a mistake in manufacturing renders a product that is ordinarily safe dangerous so that it causes harm"); *Guariglia v. Procter & Gamble Co.*, No. 15-CV-04307, 2018 WL 1335356, at *5 (E.D.N.Y. Mar. 14, 2018) ("[A] claim devoid of allegations that a particular unit differed when compared to others in the same product line will be dismissed."); *Colon ex rel. Molina v. BIC USA, Inc.*, 199 F. Supp. 2d 53, 85 (S.D.N.Y. 2001) (finding that to successfully plead a manufacturing defect claim, the complaint must allege both "that a specific product unit was

defective as a result of some mishap in the manufacturing process itself, improper workmanship, or because defective materials were used in construction," and "that the defect was the cause of plaintiff's injury." (quotation marks and citation omitted)); *Caprara v. Chrysler Corp.*, 52 N.Y.2d 114, 128–29 (1981) (finding that a manufacturing defect in a product is one which results from a mistake or error made during the manufacturing process); *Angona v. City of Syracuse*, 987 N.Y.S.2d 761 (App. Div. 2014) (finding that, in a strict products liability action, summary judgment for the defendants was not warranted, where defendants did not establish that the defect in the product did not exist at the time it left their control and the plaintiff's expert raised a triable issue of fact with respect to the adequacy of defendant's quality control and inspection procedures).

"Under New York law, [i]t is well settled that, whether [an] action is pleaded in strict products liability, breach of warranty or negligence, it is a consumer's burden to show that a defect in the product was a substantial factor in causing the injury." *Vicusi v. P&G – Clairol, Inc.*, 346 F. App'x 715, 716 (2d Cir. 2009); Restatement (Third) of Torts: Prod. Liab. § 2 (1998) (stating that a manufacturing defect exists when there is a departure from the design specifications of the product or when the product is "physically flawed, damaged, or incorrectly assembled").

A defendant moving for summary judgment on a manufacturing defect claim must meet its initial burden "by presenting competent evidence" that the challenged product was "not defective." *See Cassatt v. Zimmer, Inc.*, 75 N.Y.S.3d 764, 766 (App. Div. 2018); *see also Minda*, 1999 WL 491877, at *1 (stating that a defendant moving for summary judgment on a manufacturing defect claim "must submit proof in an admissible form establishing that plaintiff's injuries were not caused by a manufacturing defect in the product"). The burden "then shifts to the plaintiff to demonstrate a triable issue as to whether in fact there was a defect." *Minda*, 1999

WL 491877, at *1; *Cassatt*, 75 N.Y.S.3d at 766 (finding that after the defendant met its initial burden, the plaintiff "failed to raise a triable issue of fact in opposition by either direct or circumstantial evidence"); *Brown v. Borruso*, 660 N.Y.S.2d 780, 781 (App. Div. 1997) ("To meet that burden, plaintiff cannot rely solely upon the occurrence of the accident, but must submit some direct evidence that a defect existed."). "The existence of a defect may be established circumstantially, i.e., by evidence from which the jury could infer that the car did not perform as intended." *See Fili v. Matson Motors, Inc.*, 590 N.Y.S.2d 961, 963 (App. Div. 1992).

In support of her manufacturing defect claim, Plaintiff submitted an affidavit from Dr. Lear with his findings based on his inspection of the Vehicle and inspection of a similar vehicle, a 2016 Toyota RAV-4. (Lear Aff. ¶ 4–5.) Dr. Lear observed "a number of sharp edges on the underside of the front passenger seat and at least two sharp points that could cause the type of injury that Plaintiff suffered." (Lear Aff. ¶ 8.) He also observed a "sharp mounting tab" below the front passenger seat where the "lock mechanism which held the module on the tab had failed and the module was a loose slip fit." (*Id.*) He concluded that the Vehicle's "protruding sharp edges on the underside of the front passenger seat is not a reasonably safe, state-of-the-art product or design — as manufactured or distributed."[7] (*Id.* ¶ 12.)

Defendant does not dispute that repairs were made to the Vehicle's front passenger seat in April of 2015. An invoice report from Manfredi Auto Group dated April 13, 2015 states that tape was installed "over sharp arm" under the driver and front passenger side seats. (April 2015 Invoice.) The fact that repairs were made to the passenger side seat of the Vehicle lends support

---

[7] Defendant argues that Dr. Lear's conclusion "implicates a design defect, not a manufacturing defect." (Def. Obj. 9.) Notwithstanding Defendant's characterization of Dr. Lear's conclusions, his observations and expert report nevertheless support Plaintiff's manufacturing defect claim and creates a triable issue of fact as to whether her injury was caused by the alleged manufacturing defect.

13

to Plaintiff's argument that the seat, as manufactured, deviated from its intended design. In addition, Plaintiff testified that she observed a lot of "sharp metal areas" when she took the car to the dealer for a service inspection. (Berger Dep. 158:20–22.)

Construing the evidence in the light most favorable to Plaintiff, the evidence raises a triable issue of fact as to whether Plaintiff's injury was caused by a manufacturing defect in the vehicle. *See Fili*, 590 N.Y.S.2d at 963 (finding that the plaintiff's "pretrial testimony that he did not depress the accelerator was sufficient to raise a triable issue of fact whether the accident was caused by a mechanical defect in the vehicle"). Accordingly, the Court denies Defendant's motion for summary judgment as to Plaintiff's manufacturing defect claim.

### d. Breach of implied warranty of merchantability claim

Defendant argues that the Court should grant summary judgment as to Plaintiff's implied warranty of merchantability claim with regard to the hand injury because it "cannot be disputed that the alleged sharp metal pieces under the passenger seat did not affect the drivability of the Vehicle and Plaintiff's ability to use it safely for transportation." (Def. Obj. 13.)

Plaintiff does not argue that the underside of the front passenger seat affected the drivability of the Vehicle; instead, Plaintiff argues that a manufacturing defect caused her physical injury and that she was "deprived . . . from her enjoyment of her new car." (Pl. Opp'n 15.)

Under the New York law, the implied warranty of merchantability requires that the product sold be reasonably fit for the ordinary purpose for which it was intended. *See Porrazzo v. Bumble Bee Foods, LLC*, 822 F. Supp. 2d 406, 414, 415 (S.D.N.Y. 2011) (holding that "under New York law, a manufacturer may be held liable for breach of implied warranty of merchantability when its products are not 'fit for the ordinary purposes for which such goods are used.'" (quoting N.Y. U.C.C.§ 2-314(2)(c))). Section 2–314 of the New York Uniform

14

Commercial Code ("UCC") provides, in pertinent part, that "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." N.Y. U.C.C. § 2–314(1). To be merchantable, the goods must be: (1) fit for the ordinary purpose for which they are used; (2) capable of passing without objection in the trade under the contract description; and (3) of fair and average quality for such goods. N.Y.U.C.C. § 2–314(2)(c).

The focus of a breach of implied warranty of merchantability claim is whether the product "meets the expectations for the performance of the product when used in the customary, usual[,] and reasonably foreseeable manners." *Denny v. Ford Motor Co.*, 87 N.Y.2d 248, 258–59 (1995). Several courts in this district have held that, with respect to a motor vehicle, the "'ordinary purpose' to which the implied warranty speaks is 'to enable the purchaser to transport herself upon the streets and highways . . . in a reasonably safe manner.'" *Jackson v. Eddy's LI RV Center, Inc.*, 845 F. Supp. 2d 523, 531 (E.D.N.Y. 2012) (quoting *Enobakhare v. Carpoint, LLC*, No. 08-CV-4798, 2017 WL 703920, at *9 (E.D.N.Y. Jan. 10, 2011); *Diaz v. Paragon Motors of Woodside, Inc.*, 424 F. Supp. 2d 519, 541 (E.D.N.Y. 2006) ("[A]t a bare minimum[,] the ordinary purpose for an automobile is to enable the purchaser to transport herself upon the streets and highways of this state or any other in a reasonably safe manner." (citation and internal quotation marks omitted)). In other words, the implied warranty is breached where the product in question is not fit for the ordinary purpose for which it is to be used. *See Denny*, 87 N.Y.2d at 258 (citing N.Y. U.C.C. § 2–314(2)(c)). An implied warranty provides for a "minimal level of quality" and "arises automatically in every sale of goods by one who is a merchant in those goods." *Meserole v. Sony Corp. of Am., Inc.*, No. 08-CV-8987, 2009 WL 1403933, at *8 (S.D.N.Y. May 19, 2009) (citation and internal quotation marks omitted).

To "succeed on an implied warranty claim, the plaintiff 'must show both the existence

15

and breadth of the warranty and that the breach was the proximate cause of [the] plaintiff's damages.'" *Mahoney v. Endo Health Solutions, Inc.*, No. 15-CV-9841, 2016 WL 3951185, at *4 (S.D.N.Y. July 20, 2016) (quoting *Bellevue S. Associates v. HRH Const. Corp.*, 78 N.Y.2d 282, 298 (1991)).

Defendant argues that the "alleged sharp metal pieces under the passenger seat did not affect the drivability of the Vehicle and Plaintiff's ability to use it safely for transportation." (Def. Obj. 13.) The Court agrees. Plaintiff has not presented any facts that the alleged defect under the passenger side seat in any way affected the Vehicle's drivability or usefulness. Indeed, Plaintiff's injuries arose because she was reaching for her cellular telephone under the passenger side seat, which has nothing to do with the drivability and usefulness of the vehicle. Moreover, Plaintiff testified during her deposition that she continued using the Vehicle after her injury, including using it to drive to work. (Berger Dep. 207:16–18.)

Because Plaintiff has not provided any evidence that would allow a reasonable juror to find that the alleged defect would affect the drivability or usefulness of the Vehicle, the Court grants Defendant's motion for summary judgment as to Plaintiff's implied warranty of merchantability as it relates to the passenger side seat. *See Hines v. Mercedes-Benz USA, LLC*, 358 F. Supp. 2d 1222, 1226 (N.D. Ga. 2005) (granting the defendant's summary judgment motion as to the implied breach of warranty claim where the plaintiff failed to present facts that alleged defects in the driver's seat rendered the vehicle inoperable or not usable for its intended purpose).

### e. Breach of express warranty

Defendant argues that Plaintiff cannot recover for breach of express warranty in the absence of a manufacturing defect. (Def. Obj. 14.)

An express warranty is an "affirmation of fact or promise made by the seller to the buyer

which relates to the goods and becomes part of the basis of the bargain." N.Y.U.C.C. § 2-313(1)(a). In order to state a claim for a breach of an express warranty, a plaintiff must plead "that an express warranty existed, was breached, and that [the plaintiff] had relied on that warranty." *Reed v. Pfizer, Inc.*, 839 F. Supp. 2d 571, 578 (E.D.N.Y. 2012). Plaintiffs cannot recover under a breach of express warranty claim unless the product is defective. *See Dixon v. Ford Motor Co.*, No. 14-CV-6135, 2015 WL 6437612, at *3 (E.D.N.Y. Sept. 30, 2015) ("[A] successful breach of warranty claim requires that the product be defective.") (citing *Reed*, 839 F. Supp. 2d at 578).

Because the Court finds there are disputed issues of fact as to whether the passenger side seat suffered from a manufacturing defect, the Court denies Defendant's summary judgment motion as to Plaintiff's breach of express warranty claim.

### III. Conclusion

For the foregoing reasons, the Court grants in part and denies in part Defendant's motion for summary judgment. The Court denies Defendant's motion as to Plaintiff's manufacturing defect and breach of express warranty claims as they relate to the passenger side seat. The Court grants Defendant's motion as to Plaintiff's remaining claims.

Dated: March 30, 2019
       Brooklyn, New York

                                    SO ORDERED:

                                          s/ MKB
                                        MARGO K. BRODIE
                                        United States District Judge